[Cite as *State v. Mobley*, 2016-Ohio-4579.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO.   26858 |
| | : | |
| v. | : | T.C. NO. 15-CR-1844 |
| | : | |
| TRAEY L. MOBLEY | : | (Criminal Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

· · · · · · · · · · ·

# O P I N I O N

Rendered on the _____24th_____ day of ___June___, 2016.

· · · · · · · · · · ·

ANN M. GRABER, Atty. Reg. No. 0091731, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
          Attorney for Plaintiff-Appellee

JOHN A. FISCHER, Atty. Reg. No. 0068346, Greene Town Center, 70 Birch Alley, Suite 240, Beavercreek, Ohio 45440
          Attorney for Defendant-Appellant

· · · · · · · · · · · ·

FROELICH, J.

{¶ 1} Traey Mobley appeals from a judgment of the Montgomery County Court of Common Pleas, which found him guilty, after a bench trial, of domestic violence and felonious assault; the court acquitted him of driving under the influence of drugs and/or alcohol.   The trial court sentenced Mobley to three years in prison, and Mobley appeals.

For the following reasons, the trial court's judgment will be affirmed.

## I. Factual and Procedural History

{¶ 2} According to the State's evidence at trial, on June 22, 2015, Mobley resided with his girlfriend, Latisha Walker, their daughter, and Walker's mother in Miami Township. Their residence was on the west side of the street, which ran roughly north-south, and the home's attached garage and driveway were on the north end of the house. A tree was located to the north of the driveway between the driveway and a neighbor's yard. The street had a narrow grassy area between the sidewalk and the roadway.

{¶ 3} At approximately 2:00 a.m. that day (June 22), Walker's mother was awakened by "banging" and "screeching" outside. She ran to the garage door, opened it, and saw Walker in her (Walker's) red Dodge Charger, which was being pushed up against the garage by a silver Nissan Maxima driven by Mobley. (Walker owned both vehicles.) After opening the garage door, Walker's mother saw the Maxima strike the Charger twice more. As a result of the collisions, there was extensive damage to the driver's side of the Charger. Walker exited the Charger from the passenger side of the car.

{¶ 4} Officer Shane Duffey of the Miami Township Police Department was on patrol in a marked cruiser, when he observed the Charger and the Maxima, both still running, and heard a man and two women yelling loudly outside the residence. Officer Duffey heard Walker's mother ask Mobley, "Why didn't you stop?" Duffey made contact with the individuals, who he learned were Mobley, Walker, and Walker's mother. Duffey described Mobley as "somewhat cocky, relaxed, like it was just a simple accident." Mobley claimed to Officer Duffey that he had lost control of his car, overcorrected, and

went onto the wet grass.

{¶ 5} Duffey testified that he looked around the yard and saw a long trail of vehicle tracks coming from the neighbor's yard to the south; those tracks crossed the driveway and went to the north neighbor's yard. Duffey stated that the tracks did not line up with where the vehicles were found. Duffey further saw dirt "gouging off of the right of the driveway, almost into the neighbor's yard to the north." Duffey contacted additional officers for assistance.

{¶ 6} Officer Shawn Todd, a traffic accident reconstructionist, was called to Mobley's address. When Todd arrived, he saw the Maxima front end to front end with the Charger; Mobley, Walker, and Walker's mother were still outside the home. Todd stated that he looked around the yard and tried to determine what had happened. Officer Todd looked for physical evidence at the scene, including "tire marks, debris, contact, and induced damage to vehicles," and he later came back to the residence during daylight hours to review the scene. Officer Todd described the damage to the vehicles, tire marks, skid marks, yaw marks, and debris that he saw and explained how that evidence indicated what had occurred.

{¶ 7} Officer Todd concluded that Mobley had hit the Charger three times with the Maxima. He stated that the evidence at the scene indicated that Mobley had driven from the south, jumped the curb on the west side of the street at an angle, crossed the sidewalk onto the grass in front of Mobley's home, driven across the yard, and hit the driver's side of the Charger on the driveway, causing the Charger to spin counter-clockwise until it was nearly parallel with the garage door. The Maxima accelerated as it continued across the driveway and around a tree on the north side of the driveway, and circled back onto the

street southbound.   The Maxima continued to circle around, jumped the curb just south of the driveway, crossed the sidewalk, and again hit the driver's side of the Charger on the driveway.   Todd stated that the Maxima backed up and then came forward again on the grass to the south of the driveway, hitting the front of Charger.   When asked on cross-examination if he and defense counsel could agree that there was an accident, Todd responded, "I can't say this was an accident. This was an intentional act likely."   They did agree that the two cars had collided.

{¶ 8} Officer Todd created three "sketches" (not to scale) depicting what he believed happened at the scene; those diagrams (Plaintiff's Exs. 46-48) were admitted at trial, over Mobley's objection.[1]

{¶ 9} Both cars were towed for evidence.   Officer Duffey stated that the Maxima was able to be backed up and driven onto the flatbed tow truck.

{¶ 10} Walker testified on Mobley's behalf.   She stated that she did not know whether Mobley was aware that she was in the Charger when he hit it with the Maxima, and that she did not believe that Mobley was trying to cause her physical harm.   Walker stated that she was moving her car, too, and that the cars "hit each other together at the same time."   Walker testified that, after the collisions, Mobley "didn't attack me," he apologized, and he said that he would pay for the damage.   Walker testified that, when she spoke with the police, an officer told her that she would go to jail if she did not say what had happened.   Walker acknowledged on cross-examination that she had told an

---

[1] Mobley objected on the grounds that (1) the diagrams were not to scale, (2) they were "practically testimonial in nature" and "the best evidence rule would dictate that the testimony from the stand would be better than a document," and (3) they were cumulative of Officer Todd's testimony.   (Trial Tr. at 79.)

officer that Walker had hit her car three times, that she "was afraid," and that she believed at that time that Mobley was trying to hurt her.

{¶ 11} When asked about the Maxima's condition before the incident, Walker testified that that it was in "pretty good condition," but needed brake pads.

{¶ 12} Mobley also testified in his own defense. He stated that he did not know that Walker was in the Charger when they collided and that he did not try to cause her physical harm. Mobley testified that he lost control of the vehicle when he reached down to pick up his phone from the floor of the vehicle and texted Walker. He indicated that, when he looked up, he saw a PT Cruiser parked on the street, overcorrected, and went into the yard.

{¶ 13} Mobley testified that Walker had "seen him coming" and had tried to move out of the way, but the vehicles collided. Mobley further stated that this collision "knocked the bumper loose from the Maxima, which got wedged into the wheel well. * * * I didn't have any control of the wheel, which made me do, basically, a big donut around the tree. And we collided again at the front of the car." Mobley also said that there were problems with the brakes, which prevented him from stopping. Mobley testified that he remembered two collisions, and he said a third contact was "from her trying to move the car as well."

{¶ 14} Mobley testified that he was not angry after the collisions, and that he approached Walker to check on her welfare. Mobley stated that he told the responding officer what had happened, but the officer "automatically just assumed that it was BS." Mobley stated that he had not talked to Walker since the incident.

{¶ 15} Officer Todd testified as a rebuttal witness. The State played a portion of

his cruiser video from that night, which showed the Maxima being driven and braking prior to being placed on a flatbed tow truck. Todd also testified that tire tracks were located on the opposite side of the street from the PT Cruiser, and he found nothing to indicate that it was necessary to avoid the PT Cruiser. Todd further testified that Mobley's assertion that the bumper caused his wheel to lock up was inconsistent with the evidence at the scene, notably the acceleration marks by both tires in the grass north of the driveway and the yaw mark in the street. Finally, Todd stated that Mobley gave several explanations on June 22 for why he lost control, but Mobley never mentioned the PT Cruiser.

{¶ 16} To rebut Mobley's testimony that he had not had contact with Walker since the incident, the State offered jail telephone calls between Mobley and Walker.

{¶ 17} The trial court found Mobley guilty of felonious assault and domestic violence, but not guilty of OVI. In reaching its decision, the trial court indicated that it "found the testimony of Officer Todd to be very credible and his reconstruction evidence to be most persuasive." The court stated that it found Mobley's testimony – including his testimony about having no contact with Walker since the incident, the Maxima's having braking problems, and the circumstances of the collision – to be "incredible."

{¶ 18} After a presentence investigation, the trial court sentenced Mobley to three years in prison. Mobley appeals from his conviction, challenging the admission of Officer Todd's testimony.

### II. Admission of Police Officer's Accident Reconstruction Testimony

{¶ 19} Mobley's sole assignment of error states:

The Trial Court Erred to the Prejudice of Mr. Mobley When It Permitted the

State to Introduce Testimony of Its Accident-Reconstruction Expert Despite Failing to Provide the Expert's Report and Qualifications to Mr. Mobley.

{¶ 20} On appeal, Mobley claims that the State improperly presented expert testimony by Officer Todd without notifying him that Todd would be providing expert testimony and without providing an expert report. Mobley asserts that Officer Todd's testimony should have been excluded under Crim.R. 16(K), and that he suffered prejudice as a result of the admission of that testimony.

{¶ 21} Crim.R. 16(A) creates a reciprocal duty that the defense and prosecution disclose certain information covered by the Rule. Crim.R. 16(B)(6) requires the disclosure of "[a]ll reports from peace officers, the Ohio State Highway Patrol, and federal law enforcement agents."

{¶ 22} Crim.R. 16(K), concerning expert witnesses, provides:

An expert witness for either side shall prepare a written report summarizing the expert witness's testimony, findings, analysis, conclusions, or opinion, and shall include a summary of the expert's qualifications. The written report and summary of qualifications shall be subject to disclosure under this rule no later than twenty-one days prior to trial, which period may be modified by the court for good cause shown, which does not prejudice any other party. Failure to disclose the written report to opposing counsel shall preclude the expert's testimony at trial.

The purpose of Crim.R. 16(K) is to avoid unfair surprise by providing notice to the opposing party and allowing that party an opportunity to challenge the expert's findings, analysis, or qualifications, possibly with the support of an adverse expert who could

discredit the opinion after carefully reviewing the written report. *State v. Fetty*, 11th Dist. Portage No. 2011-P-0091, 2012-Ohio-6127, ¶ 36.

{¶ 23} The trial court has discretion to regulate discovery in a manner consistent with Crim.R. 16. If it comes to the court's attention that a party has not complied with Crim.R. 16, the trial court may "order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances." Crim.R. 16(L)(1).

{¶ 24} Mobley argues that the State never indicated, prior to trial, that Officer Todd would testify as an expert and that the State failed to provide an expert's report, as required by Crim.R. 16(K). The record is unclear whether this was the case.

{¶ 25} The record contains several receipts indicating that certain items were disclosed pursuant to Crim.R. 16. On August 11, 2015, the State filed a receipt indicating that the State had provided Mobley a copy of his computerized criminal history, pursuant to Crim.R. 16(B)(2). On August 24, the State filed a Receipt for Non-Electronic Supplemental Discovery, stating that the defense had been provided two DVDs containing recorded cruiser camera footage from June 22, 2015. One week later, on August 31, 2015, the State filed an additional Receipt for Non-Electronic Supplemental Discovery, stating that the State had provided the defense with one DVD containing recorded cruiser camera footage from June 22, 2015 (Officer Duffey's cruiser) and an Incident History Detail #51730109 (one page).

{¶ 26} However, other evidence was presented at trial that was not referenced by discovery receipts. For example, at trial, the State offered, without objection, 42

photographs taken of the evidence at Mobley's residence and of the vehicles involved in the collisions. Photographs generally must be disclosed pursuant to Crim.R. 16(B)(3). In addition, during cross-examination of Walker's mother, defense counsel asked her about a written statement that she had given to the police on June 22, 2015; the written statement is part of the record as Defendant's Exhibit A (not admitted into evidence). Written statements by a witness in the State's case-in-chief must be disclosed pursuant to Crim.R. 16(B)(7). The State also presented several recorded jail telephone calls in its rebuttal case; recorded statements of a defendant are governed by Crim.R. 16(B)(1). It is apparent that Mobley received Walker's mother's written statement, considering that it was used by the defense at trial, and the photographs and jail telephone recordings were admitted without objection.

**{¶ 27}** Mobley did assert in his sentencing memorandum and motion for an appeal bond that it was unknown whether Todd had the credentials to be designated an expert "as the defense was never given the opportunity to voir dire the officer, as he was not testifying as an expert." Mobley asserted that he would have had his own expert, but did not obtain one because he never received a curriculum vitae from the State and no witness list with an expert designation was filed.

**{¶ 28}** From the record before us, we can only speculate whether Mobley received, prior to trial, copies of Officer Todd's "sketches" of the vehicle dynamics and the evidence at the scene or any other police report by Todd. The record does not reflect whether Mobley was or was not notified about the nature of Todd's testimony. Mobley complains that Officer Todd was not identified as an expert witness on the State's witness list, filed on August 23, 2015, but Crim.R. 16(I) does not require the witness list to identify the

substance of a witness's testimony.

{¶ 29} Significantly, Mobley did not object to Officer Todd's testimony at trial, and he did not seek a continuance or make any other motion on the ground that the State had failed to provide an expert report and a summary of Todd's qualifications prior to trial. Consequently, we review the admission of Officer Todd's testimony for plain error.

{¶ 30} In order to constitute plain error, the error must be an obvious defect in the trial proceedings, and the error must have affected substantial rights. *State v. Norris*, 2d Dist. Montgomery No. 26147, 2015-Ohio-624, ¶ 22; Crim.R. 52(B). The Ohio Supreme Court has recently reiterated that, even if an accused shows that the trial court committed plain error affecting the outcome of the proceeding, an appellate court is not required to correct it. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 23. Rather, plain error should be noticed "with the utmost caution, under exceptional circumstances and *only* to prevent a manifest miscarriage of justice." (Emphasis added in *Rogers*). *Id.*, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 31} A police officer does not need to be an expert to testify about the collection of data and recording of information at an accident scene, but accident reconstruction "involves the use of scientific methodology to draw inferences from investigative data." *State v. Brady*, 7th Dist. Mahoning No. 13 MA 88, 2014-Ohio-5721, ¶ 43. *See Roy v. Gray*, 197 Ohio App.3d 375, 2011-Ohio-6768, 967 N.E.2d 800, ¶ 11 (1st Dist.). Consequently, a police officer who testifies about the cause of an accident must have knowledge concerning or experience in determining the cause of accidents. *Brady* at ¶ 43.

{¶ 32} At the beginning of his testimony, Officer Todd stated that he had specialized in traffic accident reconstruction since 2007 or 2008. He studied in the areas of vehicle dynamics, crush analysis, energy and crush, and basic traffic accident reconstruction measurements. His training included basic accident investigation during the academy, level one traffic accident investigation, level two traffic accident investigation, vehicle dynamics and traffic accident reconstruction, and black box downloading. Todd stated that he is part of the Miami Township technical accident investigation team, and he routinely is called for serious vehicle crashes and fatal traffic crashes.

{¶ 33} Officer Todd testified not only about the evidence at the scene, but also provided his opinion on what had occurred based on that evidence. For example, in concluding that the first impact caused the Charger to rotate counterclockwise and slide off the driveway into the grass, Todd explained that there were tire marks indicating a sideways slide, evidence in the grass consisting of ripped turf grass and mounded up dirt, and caked dirt in the rim and tire area on the passenger rear tire of the Charger. Officer Todd also stated that he could see "contact and induced damage on the body panel that would indicate that this vehicle [the Charger], upon being impacted, was rotated counterclockwise, which is evidenced by the crush on the vehicle and the stretching and tearing of the metal."

{¶ 34} At no point during the trial did Mobley make the trial court aware Officer Todd's opinion testimony may be improper. Mobley did not raise, either prior to or during the trial, any alleged failure by the State to comply with Crim.R. 16(K). Mobley did not object to or move to strike Officer Todd's testimony on the ground that his qualifications

were insufficient to permit him to render opinions on the number of collisions and how they occurred. Mobley did not ask to voir dire Officer Todd regarding his qualifications. Nor did Mobley raise with the trial court that Officer Todd had not been recognized by the court as an expert in accident reconstruction. In the absence of any objection to Todd's competence to testify as an expert under Evid.R. 702 or of any other objection or motion based on the State's alleged failure to comply with Crim.R. 16(K), the trial court had no reason to know of any potential basis to exclude Todd's testimony due to a Crim.R. 16(K) violation. The trial court cannot be faulted for failing to exclude, sua sponte, evidence that, on its face, appeared to be proper. We find no plain error in the trial court's admission of Officer Todd's testimony.

{¶ 35} Additionally, the record does not indicate that defense counsel would have tried the matter differently had he been aware of Officer Todd's opinions. Defense counsel's strategy was not to deny that Mobley had struck the Charger. Rather, defense counsel asserted that Mobley did not have the requisite intent to convict him of felonious assault and domestic violence. As counsel stated during closing arguments:

> * * * Your Honor, what this case boils down to is the mens rea. And we have the speculation of the State's witness based on his training and experience, what he thinks may have happened based on mud tracks and grass and dents and bangs. And then we have the testimony of the live witnesses which were present during the event.
>
> And Ms. Walker, although she didn't want to be part of this, came in the courtroom and specifically said that she did not think that my client would try to hurt her or would attempt to try to hurt her. And my client

testified that he would not do -- not hurt her or attempt to hurt her. And in fact, he didn't even know, his testimony was, that she was in the vehicle. She didn't know whether he knew he (sic) was in the vehicle. The police officers never asked whether he knew she was in the vehicle. So what we have -- the resultant is my client did not even know that she was in the vehicle at this time. So to -- the question is how could he knowingly cause or intentionally cause -- or attempt to cause physical harm to another when the evidence doesn't flesh out or pan out that there was even another present that he knew of or that anybody knew of. Nobody knew she was in the car. There was no testimony as to that.

It doesn't make sense that he knew she was in the vehicle. We didn't have a case here today where we talked about the parties were in a fight, that they got into an argument, that they were bickering, that they were on bad terms with each other, or that that was the motive for his vendetta to go back and crash a car. There was no discord or disharmony throughout this case. There was no testimony at all. He was on his home [sic]. The testimony was that he lost control of the vehicle and hit the other vehicle, and then they became entangled. And she moved, according to her testimony, Latisha Walker, and he moved, according to his testimony, back around the tree. And we have marks and scrapes and breaks and all those other indicia of an automobile accident. There's no doubt that an automobile accident happened. The issue is whether he was intentionally or knowingly causing or attempting to cause physical harm to another.

And the same argument goes for the second count in the indictment, which is a domestic relation [sic]. And that is that the State needs to prove that my client intentionally, knowingly caused or attempted to cause physical harm to a family or household member. And I just would submit to the Court that the State has not proven or brought forth proof that there was any intentional act or knowing act on my client. Now if the statute read that Tracey Mobley (sic) recklessly caused or attempted to cause physical harm by the way he was driving, you know, we'd have a different case. Maybe that was reckless. But I do not think it rises to the level of intentional. And I do not think the State met its burden with respect to intentional. And I think that that is the piece de resistance, the ultimate question of this case. All the other issues, whether there was a car accident, whether they crashed, that's not disputed. So I'd ask the Court to look closely at that burden that the State has of proving beyond a reasonable doubt that my client knowingly, intentionally, based on the live testimony of my client and the complainant.

(Trial Tr. at 128-130.)

**{¶ 36}** Defense counsel made no indication during the trial that he was surprised by Officer Todd's testimony, that he needed more information about Officer Todd's qualifications, or that he would have obtained his own accident reconstruction expert had he been aware of Todd's opinions prior to trial. Mobley did not ask for a continuance so that he could obtain his own expert, in light of the State's alleged failure to provide an expert report pursuant to Crim.R. 16(K). From the record before us, we cannot conclude

that the State improperly presented expert testimony by Officer Todd, that Officer Todd's testimony was improperly admitted by the trial court, or that Mobley was unduly prejudiced as a result of the admission of Todd's testimony.

{¶ 37} Mobley's assignment of error is overruled.

### III. Sufficiency of the Evidence

{¶ 38} As an additional matter, Mobley claims that, in the absence of Officer Todd's testimony, the State lacked sufficient evidence. "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 39} Even if we were to agree that Officer Todd's testimony was not properly admitted, the Supreme Court of Ohio has rejected the position that a reviewing court should consider only properly admitted evidence to determine whether the State has presented sufficient evidence to support a conviction. *State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, 903 N.E.2d 284, citing *Lockhart v. Nelson*, 488 U.S. 33, 38, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988); *State v. Renner*, 2d Dist. Montgomery No. 25514, 2013-Ohio-5463, ¶ 8. *Contrast State v. Kareski*, 137 Ohio St.3d 92, 2013-Ohio-4008, 998 N.E.2d 410 (appellate court should not consider judicially-noticed fact when reviewing sufficiency of the evidence). In reviewing the sufficiency of the evidence, we must consider *all* of the evidence admitted at trial, even improperly admitted evidence. *Brewer; State v. Stokes*, 2d Dist. Champaign No. 2015-CA-22, 2016-Ohio-612, ¶ 8, fn.3.

{¶ 40} Mobley does not claim that, when all of the evidence is considered, the

State presented insufficient evidence at trial; rather, he argues that the State's case, without Todd's testimony, would be insufficient to support his conviction. Upon review of the record, we find sufficient evidence to support Mobley's convictions for domestic violence and felonious assault. Accordingly, Mobley's claim that his conviction was based on insufficient evidence is without merit.

### III. Conclusion

**{¶ 41}** The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

DONOVAN, P.J. and FAIN, J., concur.

Copies mailed to:

Ann M. Graber
John A. Fischer
Hon. Michael W. Krumholtz