[Cite as *State v. Davidson*, 2024-Ohio-1078.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 29950 |
| | : | |
| v. | : | Trial Court Case No. 2022 CR 01291 |
| | : | |
| OCTAVIOUS DAVIDSON VIII | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on March 22, 2024

. . . . . . . . . . .

CHIMA R. EKEH, Attorney for Appellant

MATHIAS H. HECK, JR., by SARAH H. CHANEY, Attorney for Appellee

. . . . . . . . . . . .

HUFFMAN, J.

{¶ 1} Defendant-Appellant Octavious Davidson VIII appeals from his convictions for pandering obscenity involving a minor, pandering sexually oriented material involving a minor, and illegal use of a minor in nudity-oriented material. For the following reasons, we affirm the judgment of the trial court.

**I.     Factual and Procedural Background**

**{¶ 2}** On May 2, 2022, Robyn Case, a technical services coordinator at Wright Memorial Public Library, observed nude and partially nude suggestive photographs of what appeared to be underage females in thumbnail images that had been printed through the library's printing management software. Library patrons were able to print their own materials with anonymous guest passes.

**{¶ 3}** Case showed the images to her supervisor, and they identified the anonymous guest pass number associated with the images. Later that day, Case obtained security footage from the library cameras, and she matched the footage with the timestamp on the images. Case identified Davidson, with whom she was familiar as a regular library patron, as the individual associated with the relevant print job. Case's supervisor notified the Oakwood Police Department. The police requested information about Davidson's identity, indicated that they would obtain a warrant to search the public computer used by Davidson, and asked to be notified if Davidson returned to the library.

**{¶ 4}** On May 5, 2022, Davidson returned to the library, and Case observed Davidson print several images depicting female minors in sexually suggestive poses. Case took the images printed by Davidson that day off the printer, and the police were called. When the police arrived, they discussed the library's process of identifying Davidson as the person who had printed the images. They subsequently escorted Davidson out of the library and transported him to the Oakwood Public Safety Department, where he agreed to be interviewed by Detective Kasey Ballinger and Officer Jeffrey Watkins. During the interview, Davidson acknowledged that, on May 2, he had printed images at the library of actress Brooke Shields in "Pretty Baby," a movie she filmed

when she was 11 years old. Davidson indicated his understanding that the photos depicted a juvenile and stated that he possessed additional images at his home.

{¶ 5} Davidson provided his address to the police, who then obtained a search warrant for the residence. During the execution of the search warrant, the police found images of pornography taped across the walls in Davidson's bedroom and on his bedroom door, some of which appeared to show pre-pubescent juveniles. The police also found images depicting child sexual exploitation on a computer confiscated from Davidson's residence. Additionally, they found six shoeboxes containing images of pre-pubescent juveniles, pre-teen juveniles, teenagers, and adults in various states of nudity or engaging in sexual acts. After collecting the images, Detective Ballinger met with pediatric nurse practitioner April Denlinger from Dayton Children's Hospital Advocacy Center to obtain her opinion regarding the estimated ages of the people depicted in the images. Denlinger believed that many of the images were of children under the age of 13 and others were of children under the age of 18.

{¶ 6} On May 16, 2022, Davidson was indicted on four counts of pandering obscenity involving a minor (buy/possess obscene material) in violation of R.C. 2907.321(A)(5), felonies of the fourth degree; two counts of pandering sexually oriented material involving a minor (create material) in violation of R.C. 2907.322(A)(1), felonies of the second degree; six counts of illegal use of minor in nudity-oriented material in violation of R.C. 2907.323(A)(1), felonies of the second degree; and 18 counts of illegal use of minor in nudity-oriented material in violation of R.C. 2907.323(A)(3), felonies of the fifth degree. Davidson was subsequently re-indicted on a "B" indictment on dozens more

counts, but the State orally dismissed the "B" indictment before trial.

{¶ 7} The matter was tried to a jury. The evidence at trial included testimony from Denlinger regarding her expert opinion as to the approximate ages of the minors depicted in the images. Davidson was found guilty on all 30 counts in the initial indictment. He was sentenced to an aggregate prison term of 20 to 24 years and was designated a Tier I and Tier II sex offender.

{¶ 8} Davidson appeals, raising two assignments of error.

## II.     Assignments of Error

{¶ 9} Davidson's first assignment of error states:

THE TRIAL COURT ERRED BY ADMITTING APRIL DENLINGER'S EXPERT-OPINION TESTIMONY WITHOUT A WRITTEN REPORT IN COMPLIANCE WITH CRIM.R.16(K).

{¶ 10} Davidson argues that the trial court erred in admitting Denlinger's expert opinion testimony at trial without requiring a written report from her in compliance with Crim.R. 16(K).

{¶ 11} Crim.R. 16 governs discovery in criminal cases. Crim.R. 16(K) addresses expert witnesses; it requires that an expert witness generate a written report covering certain matters and that the report be disclosed to the opposing party no later than 21 days before trial. *State v. Boaston*, 160 Ohio St. 3d 46, 2020-Ohio-1061, 153 N.E.3d 44, ¶ 46, citing *State v. Walls,* 6th Dist. Erie Nos. E-16-027, E-16-028, 2018-Ohio-329, ¶ 27. Crim.R. 16(K) specifically states:

An expert witness for either side shall prepare a written report summarizing

the expert witness's testimony, findings, analysis, conclusions, or opinion, and shall include a summary of the expert's qualifications. The written report and summary of qualifications shall be subject to disclosure under this rule no later than twenty-one days prior to trial, which period may be modified by the court for good cause shown, which does not prejudice any other party. Failure to disclose the written report to opposing counsel shall preclude the expert's testimony at trial.

"The purpose of Crim.R. 16(K) is to avoid unfair surprise by providing notice to the opposing party and allowing that party an opportunity to challenge the expert's findings, analysis, or qualifications, possibly with the support of an adverse expert who could discredit the opinion after carefully reviewing the written report." *State v. Mobley*, 2d Dist. Montgomery No. 26858, 2016-Ohio-4579, ¶ 22, citing *State v. Fetty,* 11th Dist. Portage No. 2011-P-0091, 2012-Ohio-6127, ¶ 36.

{¶ 12} The trial court has discretion "to regulate discovery in a manner consistent with Crim.R. 16." *Id.* at ¶ 23. "If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances." Crim.R. 16(L)(1).

{¶ 13} Generally, decisions regarding the admissibility of evidence are within a trial court's discretion and will be upheld unless an abuse of discretion is demonstrated.

*State v. Haines*, 112 Ohio St.3d 393, 2006-Ohio-6711, 860 N.E.2d 91, ¶ 50. To constitute an abuse of discretion, a trial court's action must be arbitrary, unreasonable, or unconscionable. *Ojalvo v. Bd. of Trustees of Ohio State Univ.*, 12 Ohio St.3d 230, 232, 466 N.E.2d 875 (1984). When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993). Rather, a reviewing court "must be guided by a presumption that the findings of the trial court are correct." *Focke v. Focke*, 83 Ohio App.3d 552, 555, 615 N.E.2d 327 (2d Dist.1992).

**{¶ 14}** Davidson argues that the record does not reflect that the defense was notified by the State that Denlinger would testify as an expert or that the defense was provided with an expert's report in advance of trial as required by Crim.R. 16(K). It is true that the record does not contain a receipt for the initial discovery provided by the State to Davidson, which would often contain materials such as police reports, witness statements, and expert reports. However, the record does reflect that on January 25, 2023, the State furnished its lists of witnesses, which included Denlinger. On February 24, 2023, the State filed a receipt for a supplemental discovery packet provided to the defense consisting of one USB containing photos from the search warrant execution and the interview with Davidson. On May 22, 2023, the State filed an additional receipt for a supplemental discovery packet provided to the defense consisting of one USB containing 72 photographs. Davidson's attorney never objected or indicated that he was unaware of the nature of Denlinger's anticipated testimony.

**{¶ 15}** Davidson cannot prove that the State failed to provide the expert report

simply by saying that it does not appear on the docket, as the record intimates that initial discovery was exchanged (albeit without a receipt) prior to the supplemental discovery packets. The record does not explicitly reflect whether defense counsel was or was not notified about the nature of Denlinger's testimony prior to trial, but discussions during trial -- particularly defense counsel's voir dire of Denlinger -- indicate pretrial knowledge of the nature of Denlinger's anticipated testimony.

{¶ 16} It stands to reason, though, that if an expert report had not been provided to defense counsel, counsel would have objected to Denlinger's testimony at trial based on the lack of a report.   Notably, defense counsel did not object to Denlinger's testimony on the ground that the State had failed to provide an expert report and a summary of Denlinger's qualifications prior to trial in accordance with Crim.R. 16(K).   Such an objection was required in order to preserve our review of this issue under an abuse of discretion standard.   Instead, defense counsel only objected to Denlinger's trial testimony based on her qualifications, arguing that she was not qualified as an expert to opine as to the ages of the people in the photographic images.   Because Davidson did not object based on the State's purported failure to comply with Crim.R. 16(K), we review the admission of Denlinger's expert testimony for plain error.

{¶ 17} Plain error arises only when "but for the error, the outcome of the trial clearly would have been otherwise." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus. "In order to constitute plain error, the error must be an obvious defect in the trial proceedings, and the error must have affected substantial rights." *State v. Mobley*, 2d Dist. Montgomery No. 26858, 2016-Ohio-4579, ¶ 30, citing

*State v. Norris,* 2d Dist. Montgomery No. 26147, 2015-Ohio-624, ¶ 22; Crim.R. 52(B). " * * * [E]ven if an accused shows that the trial court committed plain error affecting the outcome of the proceeding, an appellate court is not required to correct it." *Id.*, citing *State v. Rogers,* 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 23. Plain error should be noticed "with the utmost caution, under exceptional circumstances and *only* to prevent a manifest miscarriage of justice." (Emphasis sic.) *Id.*, quoting *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 18} Denlinger testified regarding her qualifications as a pediatric nurse practitioner at Dayton Children's Hospital in the child advocacy department and as a sexual assault nurse examiner. She explained that she had additional training in sexual abuse, physical abuse, and neglect and had trained under pediatricians who specialized in child abuse. When the State sought to designate Denlinger as an expert pediatric nurse practitioner with a specialty in child abuse, defense counsel objected on the basis of Denlinger's qualifications to offer her opinion about the ages of those shown in the images and requested to voir dire her. At a sidebar before voir dire, defense counsel stated, "I thought we were going to speak to that she can tell certain ages somehow," suggesting that he was aware in advance that Denlinger may provide testimony concerning ages.

{¶ 19} During his voir dire of Denlinger, defense counsel asked what training, education, and experience qualified Denlinger to render opinions on the age of an individual based on a photograph. Denlinger testified that her training in sexual maturity rating occurred at university and during her training as a pediatric sexual assault nurse examiner. Specifically, she testified that she had been trained to determine a child's

sexual maturity rating by looking at signs of puberty, facial features, and body habitus. She stated that children undergo a predictable pattern of pubertal development, which usually starts between the ages of eight and 13; thus, she was able to provide an age determination of less than 13 or less than 18 years of age from an image if the person in the image had no signs of puberty or beginning signs of puberty, respectively. She also testified that she often fulfilled examinations by photographs alone, where she provided recommendations and opinions via photograph interpretation. Defense counsel's inquiries during voir dire demonstrated that he understood the purpose of Delinger's testimony – to support the State's position as to the age of the people in the photographs – and counsel strategically attempted to exclude her testimony based upon a claimed lack of qualifications to render such an opinion.

{¶ 20} After voir dire, defense counsel restated his objection to Denlinger's testimony, stating that despite her years of experience working with kids, the State did not show that Denlinger had "any kind of special training to determine age" from a photograph or that she had previously testified about that in prior cases. Thus, counsel challenged that she was "an expert in that particular area." The trial court overruled defense counsel's objection, finding that Denlinger's testimony would assist the jury based on her qualifications and designating her an expert as a pediatric nurse practitioner with a specialty in child abuse and child development.

{¶ 21} Davidson did not raise any alleged failure by the State to comply with Crim.R. 16(K) during Denlinger's voir dire or at any time prior to or during trial. Because Davidson did not object based the State's alleged failure to comply with Crim.R. 16(K),

the trial court had no reason to consider excluding Denlinger's testimony due to a Crim.R. 16(K) violation. "The trial court cannot be faulted for failing to exclude, sua sponte, evidence that, on its face, appeared to be proper." *Mobley,* 2d Dist. Montgomery No. 26858, 2016-Ohio-4579, at ¶ 34. Moreover, defense counsel did not suggest at trial that he would have obtained his own expert (or ask for a continuance to do so) based on the State's alleged failure to provide an expert report pursuant to Crim.R. 16(K). Based on the record before us, we cannot conclude that the State improperly presented expert testimony by Denlinger, that Denlinger's testimony was improperly admitted by the trial court, that Davidson's substantial rights were affected, or that Davidson was unduly prejudiced as a result of the admission of Denlinger's testimony. Accordingly, we find no plain error in the trial court's admission of Denlinger's testimony.

{¶ 22} Davidson's first assignment of error is overruled.

{¶ 23} Davidson's second assignment of error states:

APPELLANT WAS IMPROPERLY REQUIRED TO COMPLY WITH

BOTH TIER I AND TIER II SEX OFFENDER REQUIREMENTS.

{¶ 24} Davidson contends that he was improperly required to comply with both Tier I and Tier II sex offender requirements. He argues that subjecting him to the compliance of both tiers is "unduly onerous," serves no purpose, and constitutes "double punishment." Davidson did not object to being required to comply with both Tier I and Tier II sex offender requirements at the sentencing hearing. "Upon the defendant's failure to object at sentencing, the reviewing court can conduct only a plain error review." *State v. Masson,* 7th Dist. Mahoning No. 16 MA 0066, 2017-Ohio-7705, ¶ 22. Thus, we also review the

second assignment of error for plain error.

{¶ 25} Based on the offenses of which Davidson was convicted, the trial court required Davidson to register as a Tier I and Tier II sex offender. Davidson was convicted of 24 counts of illegal use of a minor in nudity-oriented material, two counts of pandering sexually oriented material involving a minor, and four counts of pandering obscenity involving a minor.

{¶ 26} Ohio uses an offense-based three-tier system for sex offender classification. R.C. 2950.031. When a defendant is convicted of a sex crime in Ohio and is required to register as a sex offender, he is placed into one of three tiers based exclusively on the offense. Each offense is categorized by statute as Tier I, II, or III, and the trial court is required to designate the defendant as an offender based on each offense. Under Tier I, Davidson is required to complete in-person verification every year for 15 years for committing the Tier I sex offenses of illegal use of a minor in nudity-oriented material (R.C. 2907.323(A)(3)). Under Tier II, Davidson is required to complete an in-person verification every 180 days for 25 years for committing the Tier II sex offenses of pandering sexually oriented material involving a minor, illegal use of a minor in nudity-oriented material (R.C. 2907.323(A)(1)), and pandering obscenity involving a minor. At the sentencing hearing, the trial court explained to Davidson that the requirements of the lower tier would be subsumed into the higher tier pursuant to R.C. 2950.01. As such, if Davidson registers every 180 days for 25 years as required by Tier II, he will simultaneously be fulfilling his Tier I requirement. It was required by statute that Davidson be placed into each tier based on the offenses for which he was convicted,

and it also was not unduly onerous because Davidson will comply with the requirements of both tiers by complying with Tier II. We find no plain error in requiring Davidson to comply with both Tier I and Tier II sex offender requirements.

**{¶ 27}** Davidson's second assignment of error is overruled.

### III.     Conclusion

**{¶ 28}** Having overruled Davidson's two assignments of error, we affirm the judgment of the trial court.

. . . . . . . . . . . . .

EPLEY, P.J. and LEWIS, J., concur.