[Cite as *Roy v. Gray*, 197 Ohio App.3d 375, 2011-Ohio-6768.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


ROY et al.,

   Appellees and Cross-Appellants,

   v.

GRAY et al.,

   Appellants and Cross-Appellees,


APPEAL NOS. C-100223 and C-100261

TRIAL NO. A-0711430


Civil Appeals From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  December 30, 2011


Keating Muething & Klekamp, P.L.L., Matthew K. Buck, Michael T. Cappel, and
Brandi M. Stewart, for appellees and cross-appellants.

Cors & Bassett, L.L.C., Robert Hollingsworth, and Jack B. Harrison, for appellants
and cross-appellees.

Per Curiam.

{¶ 1}  Defendants-appellants Daniel Gray and the Shaw Group, Inc., appeal the trial court's judgment, entered following a jury verdict in favor of plaintiffs-appellees Lawrence and Kathy Roy, denying their motion for judgment notwithstanding the verdict or, alternatively, for a new trial.  We reverse the trial court's judgment because the jury's verdict finding Gray and the Shaw Group negligent was based on improper and prejudicial expert accident-reconstruction testimony from a police officer who had investigated the accident and improper opinion from this police officer and the Roys' accident-reconstruction expert that Gray and the Shaw Group had violated R.C. 5577.05.

### I. A Collision Between a Utility Truck and a Van

{¶ 2}  This lawsuit stems from a motor-vehicle collision that took place in a construction zone during daylight hours with no adverse weather conditions. Lawrence Roy was driving a van in which his wife, Kathy Roy, was a passenger.  Gray was driving a utility truck for his employer, the Shaw Group, hauling a wooden pole in cradles on the right side of the truck.  When Gray turned left at an intersection, the pole entered the driver's-side windshield of the Roys' van, injuring Lawrence Roy.

{¶ 3}  The Roys subsequently brought suit against Gray and the Shaw Group, asserting that they had been negligent in transporting the pole and that they had also acted maliciously, warranting an award of punitive damages.   Testimony in the three-day jury trial centered upon whether Gray, Roy, or both men had been responsible for the accident.   The Roys presented testimony from Lawrence Roy, Kathy Roy, their daughter Kristin Roy, Hamilton County Sheriff's Deputies Mike Tarr and John Losekamp, accident-reconstruction expert Erin Higinbotham, Ph.D., eyewitness Dr. Louis Thibodeaux, and neuropsychologist Dr. Thomas Sullivan, Ph.D.

{¶ 4} At the close of the Roys' evidence, the trial court overruled a motion by Gray and the Shaw Group for a directed verdict on the issue of punitive damages. The trial court then permitted the Roys to reopen their case to present Gray's testimony. At the conclusion of Gray's testimony, counsel for Gray and the Shaw Group again moved for a directed verdict on the issue of punitive damages, which the trial court overruled.

{¶ 5} Gray and the Shaw Group then presented testimony from Gray, his co-worker Randall Simmons, and accident-reconstruction expert Fred Lickert. At the close of all evidence, Gray and the Shaw Group again renewed their motion for a directed verdict on the Roys' punitive-damages claim. The trial court overruled the motion and instructed the jury accordingly.

{¶ 6} The jury rendered a verdict in favor of the Roys and against Gray and the Shaw Group in the amount of $635,429.92, which included $300,000 in punitive damages. The jury found that both parties had been negligent, with the causation of the accident 80 percent attributable to Gray and the Shaw Group's negligence and 20 percent attributable to the Roys' negligence. The trial court reduced the Roys' compensatory-damages award by 20 percent from $336,429.92 to $268,343.94.

## II. Posttrial Motions

{¶ 7} The Roys subsequently filed a motion for prejudgment interest, attorney fees, and costs, and to set a final verdict. Gray and the Shaw Group filed a motion to compel descriptive time records of the Roys' counsel, combined responses to the Roys' posttrial motions, and a motion for, alternatively, judgment notwithstanding the verdict or a new trial. The trial court granted the Roys' motion for attorney fees, awarding the Roys $125,993.05. It denied Gray and the Shaw Group's posttrial motion for alternatively judgment notwithstanding the verdict or a new trial and the Roys' motion

for prejudgment interest. The trial court entered a final judgment in the amount of $701,666.23.

### III. Assignments of Error on Appeal

{¶ 8} Gray and the Shaw Group raise three assignments of error for our review: (1) the trial court erred in not directing a verdict on the punitive-damages claim and in subsequently overruling Gray and the Shaw Group's posttrial motions seeking to vacate the punitive-damage award or, alternatively, for a new trial, (2) the trial court erred in allowing the Roys' unqualified witnesses to offer "expert" opinions regarding accident reconstruction and statutory interpretation of R.C. 5577.05, while refusing to allow Gray and the Shaw Group to present evidence that they had been, in fact, acquitted of any violation of the statute, and (3) the trial court erred in denying Gray and the Shaw Group's motion to reduce or vacate as unsupported the award of lost profits or, in the alternative, for a new trial.

{¶ 9} The Roys have filed a timely cross-appeal, raising two assignments of error: (1) the trial court erred in reducing the Roys' award of compensatory damages by 20 percent to account for the finding of comparative negligence and (2) the trial court erred in denying the Roys' motion for prejudgment interest. We begin our analysis by addressing the second assignment of error advanced by Gray and the Shaw Group because it is dispositive of their remaining assignments of error and the two assignments of error advanced in the Roys' cross appeal.

### IV. The Trial Court's Admission of Improper and Prejudicial Testimony

{¶ 10} In their second assignment of error, Gray and the Shaw Group argue that the trial court erred in allowing unqualified witnesses to offer "expert" opinions regarding accident reconstruction and statutory interpretation of R.C. 5577.05, while refusing to allow Gray and the Shaw Group to present evidence that they had been

acquitted of any violation of this statute. In their motion for new trial, they argued that this improper and inadmissible opinion testimony was key to the jury's verdict finding that Gray was negligent.

{¶ 11} Ohio courts have held that a witness who testifies about the cause of an accident must have some knowledge concerning, or experience in determining the cause of, accidents. See *Kolidakis v. Glenn McClendon Trucking Co.*, 7th Dist. No. 03 MA 64, 2004-Ohio-3638, ¶ 39. In *Scott v. Yates* (1994), 71 Ohio St.3d 219, 221, 643 N.E.2d 105, the Ohio Supreme Court clarified that accident investigation involves the collection and recording of information, while accident reconstruction involves the use of scientific methodology to draw inferences from investigative data. See id. at 220. As a result, police officers who have not been qualified as accident-reconstruction experts may not give opinions on the cause of an accident, but rather, may testify only about their collection of data and observations at the accident scene. See *Ratliff v. Brannum*, 2nd Dist. No. 2008-CA-05, 2008-Ohio-6732, ¶ 85, citing *Scott* at 221; see also *State v. Hall*, 2nd Dist. No. 19671, 2004-Ohio-663, ¶ 11, fn.1.

### A. Deputy Tarr's Testimony

{¶ 12} Prior to trial, Gray and the Shaw Group filed a motion in limine to preclude Hamilton County Sheriff's Deputies Mike Tarr and John Losekamp from offering any conclusions about the cause of the accident, because the Roys had never disclosed the deputies as expert witnesses on accident reconstruction. The trial court granted their motion in limine. But during the Roys' direct examination of Deputy Tarr, the trial court permitted Tarr, over defense objections, to use and explain diagrams prepared by Higinbotham, the Roys' expert on accident reconstruction, during his testimony to the jury. The trial court then let the Roys' counsel elicit Tarr's opinions and interpretations of evidence that he had found at the scene.

{¶ 13} Deputy Tarr testified that he had not witnessed the collision, but that he had arrived at the scene an hour after the collision had occurred. When he arrived, both vehicles were in a parking lot, and there was no physical evidence on the roadway indicating the point of impact between the pole and the Roys' vehicle. Nonetheless, the trial court permitted Tarr to use Higinbotham's diagrams to opine that Gray had not straddled the two lanes before turning. Tarr also testified that the "physical evidence" provided the basis for his opinion that the pole had entered from the left-hand lane to the right-hand lane into the Roys' lane of travel.

{¶ 14} Having reviewed Deputy Tarr's testimony, we disagree with the Roys' assertion that Tarr's testimony was confined to the evidence that he had collected and recorded at the accident scene. Instead, Tarr drew inferences from the data he had collected, opining that the accident evidence showed that Gray was responsible for the accident. As a result, the jury heard an apparently impartial public servant render an expert accident-reconstruction opinion that supported the Roys' case. Consequently, we conclude that the trial court abused its discretion in permitting Tarr's expert testimony. See *Am. Select Ins. Co. v. Sunnycalb*, 12th Dist No. CA2005-02-018, 2005-Ohio-6275, ¶ 16 (holding that a trial court abused its discretion in permitting a trooper to testify as an expert witness, when he had not been previously disclosed as an expert).

### B. Statutory Interpretation of R.C. 5577.05

{¶ 15} Gray and the Shaw Group also argue that the trial court abused its discretion when it allowed the Roys to present evidence during the trial that Gray and the Shaw Group had violated R.C. 5577.05. Even though he had never been qualified as an expert witness, Deputy Tarr was permitted to express his opinion that R.C. 5577.05 had required Gray to use a pole trailer. Then the Roys' expert, Higinbotham, was

permitted to offer not only his own interpretation of the statute, but also that of an officer with the Ohio Highway Patrol with whom he had spoken.

{¶ 16}  This court has held that expert testimony "is not admissible to interpret statutory terms which create the [standard of care]." See *Dawson v. Williamsburg of Cincinnati Mgt. Co.* (Feb. 4, 2000), 1st Dist No. C-981022, 2000 WL 125891; accord *Hinkston v. Sunstar Acceptance Corp.* (Dec. 29, 2000), 1st Dist. Nos. C-990681 and C-990701, 2000 WL 1886388.  Other Ohio courts have likewise excluded expert testimony on the meaning of statutes.  See, e.g., *Payne v. A.O. Smith Corp.* (S.D. Ohio 1985), 627 F.Supp. 226, 229; *Nicholson v. Turner Cargile* (1995) 107 Ohio App.3d 797, 809, 669 N.E.2d 529.  Consequently, we conclude that the trial court abused its discretion in permitting Deputy Tarr and Higinbotham to offer expert opinions concerning the legal interpretation of the statute and concerning whether Gray and the Roys had violated that statute.

{¶ 17}  In response, the Roys argue that even if the trial court's admission of this testimony was erroneous, Gray and the Shaw Group suffered no prejudice because Gray had admitted during his testimony that he had consciously disregarded the safety of the Roys by turning a truck with a utility pole extending 15 to 16 feet behind it.  But our review of Gray's testimony reveals that he made no such admission.  Rather, he testified that it was possible that the utility pole "could" swing into the right lane during a left turn and "could" cause an accident, which is why he took a number of precautions before hauling the pole.  Gray's testimony does not demonstrate that he had acted with malice, but rather, that he had, at most, acted recklessly or negligently.  See *Estate of Schmidt v. Derenia*, 158 Ohio App.3d 738, 2004-Ohio-5431, 822 N.E.2d 401, ¶ 22-25; *Meeker v. Graves*, 9th Dist No. 24057, 2008-Ohio-3109, ¶ 9-20; *Behrman v. Kryder Bros., Inc.* (May 13, 1996), 3rd Dist. No. 7-95-12, 1996 WL 255874.

{¶ 18} Having concluded that the trial court's admission of this testimony was erroneous, we must now determine whether its admission was so prejudicial to Gray and the Shaw Group that it required the granting of a new trial. Here, the jury heard conflicting eyewitness accounts of the accident from Mr. Roy, Gray, and Simmons. The only impartial eyewitness to the accident, Dr. Thibodeaux, gave conflicting testimony about the placement of the vehicles at the time of the accident. Because there was no physical evidence on the roadway to indicate the vehicles' placement at the point of impact, each party's expert witness relied heavily on his own party's testimony, as well as selected portions of Dr. Thibodeaux's testimony, to support his explanation of how the accident had occurred. Given these facts, the jury could have believed either the Roys' version of the facts or the version of the facts offered by Gray and the Shaw Group.

{¶ 19} Thus, Deputy Tarr's inadmissible opinion testimony that Gray had caused the accident could serve only to prejudice Gray and the Shaw Group. Police officers' statements carry with them a naturally high level of prestige and authoritativeness. Consequently, the jury could have given greater credibility to Tarr's testimony solely because of his status. When the jury heard Tarr, an impartial and neutral party, opine that Gray had caused the accident, it is highly likely that Tarr's testimony bolstered the Roys' theory that Gray had caused the accident, particularly after the Roys' counsel in closing argument asked the jury to give heightened credence to Tarr's testimony.

{¶ 20} Because there was conflicting testimony about the cause of the collision, and because the Roys' counsel compounded the error by asking the jury to follow Deputy Tarr's inadmissible opinion, we cannot say that the jury had not been swayed to render a verdict for the Roys on their negligence claim by improperly admitted opinion testimony that Gray had failed to follow Ohio law by using a pole trailer and that he had caused the

accident. See, e.g., *Kolidakis v. Glenn McClendon Trucking Co.*, 2004-Ohio-3638, ¶ 54. As a result, we sustain that part of the second assignment of error challenging the admission of Tarr and Higinbotham's expert testimony on R.C. 5577.05 and Tarr's opinion testimony on the cause of the accident.

### V. Conclusion

**{¶ 21}** Our determination that Gray and the Shaw Group are entitled to a new trial renders moot their first and third assignments of error and the balance of their second assignment of error, as well as the Roys' two cross-assignments of error challenging the reduction of their compensatory-damages award and the failure to award them prejudgment interest. We, therefore, remand this case to the trial court for further proceedings in accordance with this opinion and the law.

**Judgment reversed
and cause remanded.**

CUNNINGHAM, P.J., and SUNDERMANN and HENDON, JJ., concur.

_____